**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BAYER HEALTHCARE LLC,** | |
| **Plaintiff,** | |
| | Case No.  1:23-cv-04391 |
| **v.** | |
| **AEROPRES CORPORATION,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## COMPLAINT

Plaintiff Bayer HealthCare LLC ("Bayer") brings this action against Defendant Aeropres Corporation ("Aeropres") and alleges as follows:

## NATURE OF THE ACTION

1.      In October 2021, Bayer announced a recall of certain Lotrimin® AF ("Lotrimin") and Tinactin® ("Tinactin") antifungal spray products as a result of benzene contamination in a component supplied by Aeropres.  Aeropres' supply of contaminated product has caused Bayer to suffer millions of dollars in losses due to damaged, unsalable product, refunds, recall costs, lost profits, lost market share, and other damages.  Aeropres' benzene contamination has also subjected Bayer to class action lawsuits, which Bayer is continuing to defend at significant expense.  In this action, Bayer seeks to require Aeropres to pay for the damages caused by its supply of benzene-contaminated product.

2.      Aeropres's isobutane product, Propellant A-31, has long been used in the manufacture of Bayer's Lotrimin and Tinactin spray products.  In a contract with Bayer, Aeropres agreed that it "is responsible for bearing the costs of product technical and quality complaints, recalls and replacement of affected [Propellant A-31], provided the cause of complaint and/or

recall occurs within [Aeropres'] scope of responsibility." And under black letter legal principles, Aeropres is responsible for the damages caused by its negligence.

3. Aeropres disclosed in August 2021 that the Propellant A-31 supplied for Bayer contained benzene. The contaminated Propellant A-31 was produced in an Aeropres facility in Morris, Illinois, and later incorporated into Bayer's Lotrimin and Tinactin spray products.

4. Benzene is a chemical classified by the United States Department of Health and Human Services as a human carcinogen. It is not supposed to be included in Propellant A-31 and it is not an ingredient in Bayer's Lotrimin and Tinactin products.

5. Aeropres itself admitted the benzene contamination, stating that "Aeropres regrets this development as it is not in keeping with Aeropres' standards of product manufacture."

6. As a result of the benzene contamination, Bayer recalled certain unexpired lots of Lotrimin and Tinactin spray products after confirming the presence of benzene in some samples.

7. Since the recall, Bayer has been sued and is defending against class action claims alleging injury due to the presence of benzene in certain Lotrimin and Tinactin products. As a result of the damage Aeropres caused to Bayer's products and the resulting recall, Bayer has incurred millions of dollars in losses and additional amounts in litigation expenses that resulted from, and arose out of, Aeropres' supply of contaminated Propellant A-31.

8. Despite Aeropres' contractual obligations and its clear liability, Aeropres has failed and refused to reimburse Bayer for any of its losses.

9. Bayer therefore brings claims for breach of contract, breach of express and implied warranties, negligence, and strict liability against Aeropres for its contamination of Bayer's products and all damages resulting therefrom.

## THE PARTIES

10.     Plaintiff Bayer HealthCare LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 100 Bayer Boulevard, Whippany, New Jersey 07981.

11.     Bayer HealthCare LLC has nine members:  MiraLAX LLC, Bayer Samson I LLC, Bayer Samson II LLC, Bayer Consumer Care Holdings LLC, Bayer West Coast Corporation, Bayer Essure Inc., NippoNex Inc., Bayer Medical Care Inc., and Bayer HealthCare US Funding LLC.

12.     MiraLAX LLC, Bayer Samson I LLC, and Bayer Samson II LLC are Delaware limited liability companies whose sole member is Bayer HealthCare US Funding LLC.

13.     Bayer HealthCare US Funding LLC is a Delaware limited liability company, whose sole member is Bayer US Holding LP.

14.     Bayer Consumer Care Holdings LLC is a Delaware limited liability company whose members are Bayer HealthCare US Funding LLC and Bayer East Cost LLC, a Delaware limited liability company wholly-owned by Bayer US Holding LP.

15.     Bayer US Holding LP is a Delaware limited partnership whose partners are Bayer World Investments B.V. and Bayer Solution B.V., each of which is a private company with limited liability incorporated under Netherlands law that has its principal place of business in the Netherlands.

16.     Bayer West Coast Corporation is a Delaware corporation with its principal place of business in New Jersey.

17.     Bayer Essure Inc. is a Delaware corporation with its principal place of business in New Jersey.

18.     NippoNex Inc. is a Delaware corporation with its principal place of business in New Jersey.

19.     Bayer Medical Care Inc. is a Delaware corporation with its principal place of business in Pennsylvania.

20.     Accordingly, Bayer Healthcare LLC is deemed to be a citizen of Delaware, New Jersey, Pennsylvania, and the Netherlands for purposes of federal diversity jurisdiction.

21.     Defendant Aeropres Corporation is a corporation organized and existing under the laws of the State of Louisiana, with its principal place of business at 1324 North Hearne, Suite 200, Shreveport, Louisiana 71137.

## JURISDICTION AND VENUE

22.     This Court has general personal jurisdiction over Aeropres because Aeropres has continuous and systematic contacts with Illinois, including through its operation of Aeropres' plants located in Morris, Illinois and Manhattan, Illinois.  This Court also has specific personal jurisdiction over Aeropres because Aeropres purposefully availed itself of the privilege of conducting business in Illinois, Bayer's injuries arise from Aeropres' activities in operating its plant in Morris, Illinois, and the exercise of jurisdiction over Aeropres comports with traditional notions of fair play and substantial justice.

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Bayer and Aeropres, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

24.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1332(b)(2), because a substantial part of the events giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

**A.     Aeropres Supplies Propellant for Lotrimin and Tinactin.**

25.     Propellant A-31 is a liquefied gas that is combined with other ingredients to create Bayer's Lotrimin and Tinactin products.

26.     In July 2017, Aeropres and Bayer entered into a Quality Assurance Agreement (the "QAA"), providing the terms on which Aeropres would manufacture and supply Propellant A-31 for use in Bayer's Lotrimin and Tinactin products.

27.     Under the QAA, Aeropres represented that it "manufactures, processes, packages, tests and distributes products on its own responsibility, in accordance with agreed chemical formulae, manufacturing processes, instructions, applicable law, and Good Manufacturing Practice ('GMP')."

28.     Aeropres' Good Manufacturing Practices Policy Statement, appended to the QAA, states that Aeropres "adheres to Quality System industry best practices," and that the components of Aeropres' propellants, including isobutane, are listed on the "Generally Recognized as Safe" List.

29.     The QAA requires Aeropres to "conduct manufacturing and quality control operations of Product according to formulas, instructions and the valid manufacturing procedure set up by [Aeropres] and approved by BAYER, as well as applicable United States Food and Drug Administration ('FDA') requirements and GMP."

30.     The QAA expressly contemplates the parties' responsibilities in the event of a product recall.  As relevant here, the parties agreed that Aeropres "is responsible for bearing the costs of product technical and quality complaints, recalls and replacement of affected [Propellant A-31], provided the cause of complaint and/or recall occurs within [Aeropres'] scope of responsibility."

**B.     With Aeropres' Consent, Bayer Assigns the QAA to Beiersdorf.**

31.     On May 13, 2019, Bayer AG (the parent company of Bayer Healthcare LLC) and Beiersdorf AG ("Beiersdorf") entered into an agreement for Bayer AG to sell to Beiersdorf, among other assets, a manufacturing facility located in Cleveland, Tennessee.  Bayer had used the Cleveland, Tennessee facility to manufacture various products, including Lotrimin and Tinactin.

32.     On August 22, 2019, Bayer provided a Notice of Assignment of the QAA to Aeropres, notifying Aeropres of the Beiersdorf agreement, and that as part of that transaction the QAA (including all amendments, statements of work, exhibits, and schedules) would be assigned to Beiersdorf.

33.     On August 26, 2019, Aeropres acknowledged and agreed to the assignment of the QAA to Beiersdorf.

34.     On August 30, 2019, the transaction between Bayer and Beiersdorf closed.  As part of this transaction, Beiersdorf agreed to manufacture, package, and supply to Bayer finished Lotrimin and Tinactin spray products.

**C.     Aeropres Discovers Benzene Contamination.**

35.     On August 11, 2021, Aeropres notified Beiersdorf that Propellant A-31 supplied from its Morris, IL production facility may be contaminated with benzene.  Recognizing it was at fault, Aeropres stated that it "regrets this development as it is not in keeping with Aeropres' standards of product manufacture."

36.     Aeropres warned that "the nature of the hydrocarbon origin of the raw materials precludes our ability to assure that there are no residual solvents in the finished product."  Aeropres also informed Beiersdorf that "benzene can only be introduced into Aeropres' products by way of contamination of its natural gas liquid feedstock."

37.     Benzene has been classified as a human carcinogen.[1]  The FDA has advised that manufacturers should avoid using benzene in drug manufacturing processes and that, where benzene use is unavoidable to produce a drug product, benzene levels should be restricted to no more than 2 parts per million, unless otherwise justified.[2]

38.     Benzene cannot be removed from Propellant A-31 once contamination has occurred.  Benzene is soluble in both the liquid and gaseous phase of Propellant A-31. Remediation measures for benzene contamination of Propellant A-31 are to evacuate all tanks and piping containing the propellant, and to ensure that all liquid has evaporated and the resulting gas removed by venting the piping.

39.     On August 13, 2021, Beiersdorf notified Bayer of the benzene contamination issues.

40.     In September 2021, Beiersdorf received results of testing that confirmed benzene levels in samples of certain finished, unexpired Lotrimin and Tinactin products were above the FDA's acceptable limit of 2 parts per million.

41.     Bayer commissioned additional testing of Lotrimin and Tinactin samples which revealed that Lotrimin and Tinactin samples manufactured beginning in September 2018, the date of manufacture of the oldest unexpired lots, were contaminated with benzene.

---

[1]     *Facts About Benzene*, Ctrs. for Disease Control & Prevention, https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

[2]     *FDA Alerts Drug Manufacturers to the Risk of Benzene Contamination in Certain Drugs*, FDA, https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs; *see also* Guidance for Industry: Q3C Impurities: Residual Solvents, U.S. Dept. of Health & Human Servs., FDA (1997), https://www.fda.gov/media/71736/download; Guidance for Industry: Q3C — Tables and List at 5, U.S. Dept. of Health & Human Servs., FDA (2018) (listing recommended concentration limit for benzene).

**D.     Bayer Recalls Unexpired Lotrimin and Tinactin Lots.**

42.     On October 1, 2021, as a direct result of Aeropres's supply of benzene contaminated Propellant A-31, Bayer announced a recall of certain Lotrimin and Tinactin spray products.[3]  Bayer's announcement explained that "Benzene is not an ingredient in any of Bayer Consumer Health products."

**E.     Aeropres Refuses Responsibility for Costs of the Recall It Caused.**

43.     Following the recall, Bayer advised Beiersdorf of its obligation to reimburse recall costs and expenses incurred by Bayer in connection with the recall, under the terms of a supply agreement between the two companies.

44.     Beiersdorf to date has not reimbursed Bayer for any of its recall costs and instead has sought to deflect responsibility to Aeropres.  On information and belief, Beiersdorf sought contribution or indemnification from Aeropres for Bayer's claim.

45.     On February 23, 2023, Bayer directly informed Aeropres of its claims arising from Aeropres's supply of contaminated Propellant A-31 for use in Bayer's Lotrimin and Tinactin spray products.  Bayer also informed Aeropres that the contamination had caused Bayer to incur millions of dollars in losses, as well as ongoing litigation defense costs and other damages.

46.     In March 2023, counsel for Aeropres contacted Bayer to request information that Aeropres asserted was needed for Aeropres to give appropriate consideration to Bayer's claim.

47.     Bayer promptly provided Aeropres with responsive documents and information, including but not limited to:  (a) documents showing the scope of the recall, including details regarding the recalled products; (b) data relied upon in deciding to proceed with the recall;

---

[3] *Company Announcement: Bayer Issues Voluntary Recall of Specific Lotrimin® and Tinactin® Spray Products Due to the Presence of Benzene* (Oct. 1, 2021), FDA, https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/bayer-issues-voluntary-recall-specific-lotriminr-and-tinactinr-spray-products-due-presence-benzene.

(c) communications with FDA regarding the recall; (d) information regarding Bayer's recall costs; (e) Bayer's safety data sheets for the recalled Lotrimin and Tinactin products; and (f) the relevant agreements with Aeropres, including the QAA and Notice of Assignment (which documents Aeropres already had but requested anyway).

48.     In Bayer's response to Aeropres, Bayer requested a meeting with Aeropres and Beiersdorf for the parties to attempt to resolve Bayer's claim.

49.     On May 4, 2023, Aeropres issued another set of information requests to Bayer that were largely duplicative of the requests sent in March 2023.

50.     Notwithstanding Bayer's efforts at cooperation, Aeropres has refused to fulfill its contractual obligation to bear the costs of the recall of the Lotrimin and Tinactin products affected by contaminated Propellant A-31, or to compensate Bayer for the damages suffered as a result of Aeropres' negligence.

**F.      Bayer Has Incurred Significant Damages Stemming from Aeropres'
         Provision of Contaminated Product.**

51.     To date, the property damage and product recall resulting from and arising out of Aeropres' supply of contaminated Propellant A-31 has caused Bayer to incur millions of dollars in damages.

52.     These damages include approximately $9 million to refund stores in the U.S. for on-shelf and in-store inventory, $1 million to refund U.S. consumers who purchased product from stores, $1.2 million in fees to a refund service provider, and $800,000 to recall products in Mexico and Canada.

53.     In addition to these costs, Bayer had to destroy and write-off millions of dollars' worth of damaged Lotrimin and Tinactin product that was unsaleable due to Aeropres' contamination. By the time the contaminated Propellant A-31 reached Bayer's possession, the

9

liquefied propellant had been combined with the Lotrimin and Tinactin products, and Bayer had no ability to extract the contaminated Propellant A-31.

54.     Also as a result of Aeropres' supply of contaminated Propellant A-31 and consequent damage to Bayer's products, Bayer has been sued by consumers alleging injury as a result of the presence of benzene in the products containing Propellant A-31 supplied by Aeropres. Bayer has already incurred significant defense costs and those costs are continuing to accrue as the lawsuits are ongoing.

## CLAIMS FOR RELIEF

## COUNT I

## Breach of Contract (Direct Claim)

55.     Bayer re-alleges and incorporates by reference into this cause of action each and every allegation set forth in Paragraphs 1 through 54.

56.     In July 2017, Bayer and Aeropres entered into a valid and enforceable contract, the QAA, under which Aeropres agreed to supply Bayer with Propellant A-31.

57.     Bayer performed all of its obligations and conditions under the QAA.

58.     Under the QAA, Aeropres agreed to be "responsible for bearing the costs of product technical and quality complaints, recalls and replacement of affected [Propellant A-31], provided the cause of complaint and/or recall occurs within [Aeropres'] scope of responsibility."

59.     Aeropres provided Bayer with Propellant A-31 containing benzene in amounts exceeding acceptable limits established by FDA and causing the products to be recalled.  Aeropres manufactured the contaminated Propellant A-31 at Aeropres' facility in Morris, Illinois.

60.     Bayer has suffered and continues to suffer losses, damages, damages and injury to property, claims, demands, causes of action, suits, and expenses resulting from and arising out of Aeropres' supply of contaminated Propellant A-31.

61.     Aeropres is obligated to reimburse Bayer for the losses, damages, damages and injury to property, lost profits, lost market share, claims, demands, causes of action, suits, and expenses, including litigation expenses, Bayer has incurred or will in the future incur as a result of Aeropres' supply of contaminated Propellant A-31.

## COUNT II

## Breach of Contract (Third-Party Beneficiary Claim)

62.     Bayer re-alleges and incorporates by reference into this cause of action each and every allegation set forth in Paragraphs 1 through 54.

63.     In August 2019, Bayer assigned the QAA to Beiersdorf, creating a valid and enforceable contract between Aeropres and Beiersdorf, pursuant to which Aeropres would supply Beiersdorf with Propellant A-31 to be used in the manufacture of Bayer's Lotrimin and Tinactin spray products.

64.     Bayer is a third-party beneficiary of the QAA because Aeropres entered into the agreement with Beiersdorf knowing and intending that the Propellant A-31 Aeropres supplied to Beiersdorf would be used in products manufactured for Bayer.

65.     Under the QAA, Aeropres agreed to be "responsible for bearing the costs of product technical and quality complaints, recalls and replacement of affected [Propellant A-31], provided the cause of complaint and/or recall occurs within [Aeropres'] scope of responsibility."

66.     As Aeropres itself has admitted, Aeropres provided Beiersdorf with Propellant A-31 containing benzene in amounts exceeding acceptable limits established by FDA and causing the products to be recalled. Aeropres manufactured the contaminated Propellant A-31 at Aeropres' facility in Morris, Illinois.

11

67. Bayer has suffered and continues to suffer losses, damages, damages and injury to property, claims, demands, causes of action, suits, and expenses resulting from and arising out of Aeropres' supply of contaminated Propellant A-31.

68. Aeropres is obligated to reimburse Bayer for the losses, damages, damages and injury to property, lost profits, lost market share, claims, demands, causes of action, suits, and expenses, including litigation expenses, Bayer has incurred or will in the future incur as a result of Aeropres' supply of contaminated Propellant A-31.

## COUNT III

### Breach of Express Warranties (U.C.C. § 2-313)

69. Bayer re-alleges and incorporates by reference into this cause of action each and every allegation set forth in Paragraphs 1 through 54.

70. In connection with Aeropres' supply of Propellant A-31 to Bayer (both directly and indirectly through Beiersdorf's manufacture of Bayer's Lotrimin and Tinactin products), Aeropres made express warranties upon which Bayer relied in purchasing and using Propellant A-31 from Aeropres.

71. The express warranties that Aeropres made directly to Bayer include at least the following:

a. Aeropres represented that it "manufactures, processes, packages, tests and distributes products on its own responsibility, in accordance with agreed chemical formulae, manufacturing processes, instructions, applicable law, and Good Manufacturing Practice ('GMP')."

b. Aeropres agreed to "conduct manufacturing and quality control operations of Product according to formulas, instructions and the valid manufacturing procedure set up by

[Aeropres] and approved by BAYER, as well as applicable United States Food and Drug Administration ('FDA') requirements and GMP."

c.  Aeropres warranted that it "adheres to Quality System industry best practices," and that the components of Aeropres' propellants, including isobutane, are listed on the Generally Recognized as Safe ("GRAS") List.

72.    Bayer is a third-party beneficiary of the express warranties in the QAA because Aeropres entered the assignment with Beiersdorf knowing and intending that the Propellant A-31 would be used in products Beiersdorf was manufacturing for Bayer.

73.    Aeropres breached its express warranties to Bayer by supplying Propellant A-31 that, as Aeropres has in part admitted, was defective and needed to be recalled due to benzene contamination; did not conform with agreed chemical formulae, manufacturing processes, instructions, applicable law, or GMP; did not conform with FDA requirements; did not conform with industry best practices; and the benzene component of the contaminated Propellant A-31 was not listed on the GRAS List.  Aeropres manufactured the contaminated Propellant A-31 at Aeropres' facility in Morris, Illinois.

74.    As a direct and proximate result of Aeropres' breach of its express warranties to Bayer, Bayer suffered significant damage, including but not limited to damages and injury to property, and the damages associated with a nationwide recall to remove affected products.  These damages include loss of damaged product, recall-related expenses, lost profits, lost market share, and significant litigation expenses, resulting from and arising out of Aeropres' supply of contaminated Propellant A-31.  These litigation expenses continue to accrue.

13

## COUNT IV

### Breach of Implied Warranty of Merchantability (U.C.C. § 2-314)

75.     Bayer re-alleges and incorporates by reference into this cause of action each and every allegation set forth in Paragraphs 1 through 54.

76.     Aeropres, a merchant of Propellant A-31 and goods of that kind, sold Propellant A-31 to Bayer and also to Beiersdorf, which was then used in products manufactured for Bayer. Aeropres manufactured the contaminated Propellant A-31 at Aeropres' facility in Morris, Illinois.

77.     The Propellant A-31 was not of merchantable quality because, among other things, the Propellant A-31 (a) would not pass without objection in the trade under the contract description; (b) was not of fair average quality within the contract description; (c) was not fit for the ordinary purposes for which Propellant A-31 is used; and (d) did not run, within the variations permitted by the QAA, of even kind, quality and quantity within each unit and among all units involved.

78.     Bayer is a third-party beneficiary of the implied warranties in any contract between Beiersdorf and Aeropres for the sale of Propellant A-31 because Aeropres entered into these contracts knowing and intending that the Propellant A-31 it supplied to Beiersdorf would be used in products manufactured for Bayer.

79.     As a direct and proximate result of Aeropres' breach of the implied warranty of merchantability to Bayer, Bayer suffered significant damage, including but not limited to damages and injury to property, and the damages associated with a nationwide recall to remove affected products.  These damages include loss of damaged product, lost profits, lost market share, recall-related expenses, and significant litigation expenses, resulting from and arising out of Aeropres' supply of contaminated Propellant A-31.  These litigation expenses continue to accrue because the lawsuits are continuing.

14

## COUNT V

### Breach of Implied Warranty of Fitness for a Particular Purpose (U.C.C. § 2-315)

80.     Bayer re-alleges and incorporates by reference into this cause of action each and every allegation set forth in Paragraphs 1 through 54.

81.     At the time of contracting, Aeropres had reason to know that Propellant A-31 would be used as an ingredient in Bayer's Lotrimin and Tinactin products, which were intended for sale and use in topical applications in humans.

82.     The Propellant A-31 sold by Aeropres to Beiersdorf was not fit for the purpose of being incorporated into products intended for human topical application.  Aeropres manufactured the contaminated Propellant A-31 at Aeropres' facility in Morris, Illinois.

83.     Bayer relied on Aeropres' skill and judgment to select suitable goods for the purpose of being incorporated into products intended for human topical application.

84.     Bayer is a third-party beneficiary of the implied warranties in any contract between Beiersdorf and Aeropres for the sale of Propellant A-31 because Aeropres entered into these contracts knowing and intending that the Propellant A-31 it supplied to Beiersdorf would be used in products manufactured for Bayer.

85.     As a direct and proximate result of Aeropres' breach of the implied warranty of fitness for a particular purpose, Bayer suffered significant damage, including but not limited to damages and injury to property, and the damages associated with a nationwide recall to remove affected products.  These damages include loss of damaged product, lost profits, lost market share, recall-related expenses, and significant litigation expenses, resulting from and arising out of Aeropres' supply of contaminated Propellant A-31.  These litigation expenses continue to accrue because the lawsuits are continuing.

## COUNT VI

## Negligence

86.     Bayer re-alleges and incorporates by reference into this cause of action each and every allegation set forth in Paragraphs 1 through 54.

87.     Aeropres breached its duty to Bayer to provide Propellant A-31 in a condition that was not unreasonably dangerous.  Aeropres failed to take adequate precautions to prevent contamination of the Propellant A-31, and/or to take adequate steps to detect contamination once it occurred.

88.     As a result of the sudden and calamitous event of the contamination of Aeropres' Propellant A-31, Bayer's Lotrimin and Tinactin products were damaged beyond use or repair. Aeropres manufactured the contaminated Propellant A-31 at Aeropres' facility in Morris, Illinois.

89.     As a direct and proximate cause of Aeropres' damage to Bayer's Lotrimin and Tinactin products, Bayer suffered significant damage, including but not limited to damages and injury to property, and the damages associated with a nationwide recall to remove affected products.  These damages include loss of damaged product, lost profits, lost market share, recall-related expenses, and significant litigation expenses, resulting from and arising out of Aeropres' supply of contaminated Propellant A-31.  These litigation expenses continue to accrue because the lawsuits are continuing.

## COUNT VII

## Strict Liability

90.     Bayer re-alleges and incorporates by reference into this cause of action each and every allegation set forth in Paragraphs 1 through 54.

91.     Aeropres is engaged in the business of selling Propellant A-31.

16

92.     The Propellant A-31 was expected to and was used in Bayer's Lotrimin and Tinactin products without substantial change in the condition in which the Propellant A-31 was sold.

93.     The Propellant A-31 provided to Bayer, both directly and indirectly through Beiersdorf, was in a defective, unreasonably dangerous condition.  Aeropres manufactured the contaminated Propellant A-31 at Aeropres' facility in Morris, Illinois.

94.     As a direct and proximate cause of Aeropres' damage to Bayer's Lotrimin and Tinactin products, Bayer suffered significant damage, including but not limited to damages and injury to property, and the damages associated with a nationwide recall to remove affected products.  These damages include loss of damaged product, lost profits, lost market share, recall-related expenses, and significant litigation expenses, resulting from and arising out of Aeropres' supply of contaminated Propellant A-31.  These litigation expenses continue to accrue because the lawsuits are continuing.

## **PRAYER FOR RELIEF**

WHEREFORE, Bayer requests that judgment be entered against Defendant Aeropres Corporation on each Count and that Bayer be awarded the following relief:

A.  Compensatory damages for the property damage and resulting losses caused by Aeropres' breaches and negligent conduct, in an amount to be determined at trial;

B.  Consequential damages for the property damage and resulting losses caused by Aeropres' breaches and negligent conduct, in an amount to be determined at trial;

C.  Bayer's pre-judgment and post-judgment interest, and its attorney's fees, costs, and any and all other expenses incurred in this action and with Bayer's efforts prior to commencing this action, to require Aeropres to comply with the terms of the QAA;

D.  Any such other relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of 12 on all counts.

Dated:  July 7, 2023

Respectfully submitted,

**BAYER HEALTHCARE LLC**

By:  /s/  *Riley C. Mendoza*
        One of Its Attorneys

Riley C. Mendoza (6314666)
**SHOOK, HARDY & BACON L.L.P.**
111 South Wacker Drive, Suite 4700
Chicago, Illinois 60606
(312) 704-7700
rmendoza@shb.com

Michael X. Imbroscio (*pro hac vice forthcoming*)
Benjamin J. Razi
Maura A. Sokol (*pro hac vice forthcoming*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
(202) 662-6000
mimbroscio@cov.com
brazi@cov.com
msokol@cov.com

*Attorneys for Plaintiff Bayer Healthcare LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Riley C. Mendoza, an attorney, hereby certify that on **July 7, 2023**, I caused a true and

complete copy of the foregoing **COMPLAINT** to be electronically filed with the Court via the

Court's ECF system which sends notification and a copy of same to all counsel of record.


_/s/ Riley C. Mendoza_