UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Bayer HealthCare LLC, *Plaintiff*, v. Aeropres Corporation, *Defendant.* | No. 23 CV 4391<br><br>Judge Lindsay C. Jenkins |
| Aeropres Corporation, *Third Party Plaintiff*, v. Aux Sable Liquid Products LP and BP Energy Company *Third Party Defendants* | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bayer HealthCare LLC filed this lawsuit against Aeropres Corporation, alleging that Aeropres supplied propellant gases contaminated with benzene to Bayer, which Bayer later incorporated into two antifungal foot sprays. [Dkt. 1.] Aeropres has filed a Third-Party Complaint against Aux Sable and BP Energy, the entities from which Aeropres sourced the gas supply for the propellants it provided to Bayer. [Dkt. 66.] BP and Aux Sable have each moved to dismiss Aeropres's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [Dkt. 86, 105.] The motions are granted in part and denied in part.

1

**I.** **Legal Standard**

At the motion to dismiss stage, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826–27 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up). A plaintiff's claim must be "plausible, rather than merely speculative," which requires a plaintiff to allege "just enough details about the subject matter of the case to present a story that holds together." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570–71 (7th Cir. 2023) (cleaned up).

**II.** **Background**[1]

Bayer filed this lawsuit in 2023 against Aeropres arising from a benzene contamination used in antifungal spray products produced by Bayer. [Dkt. 66, ¶ 10.] During the relevant period, Aeropres sourced certain propellants it provided to Bayer—namely, butane, isobutane, and propane—from BP Energy. Aeropres and BP executed a written contract covering their agreement called a "Master Agreement for Purchase, Sale, or Exchange of Liquid Hydrocarbons." [*Id.*, ¶ 14.] Section 5.1 of the Master Agreement described specifications regarding the quality metrics for the gas supply (also called feedstock). The provision stated that any product supplied could

---

[1] The following factual allegations are taken from Aeropres's Complaint and are accepted as true for the purposes of the motion. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). In setting forth the facts at the pleading stage, the Court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

contain no "deleterious substances or concentrations of any contaminants" that would make it commercially unacceptable in the industry. [*Id.*, ¶ 22.]

Aeropres alleges that BP is a "marketer and seller of the alleged benzene-contaminated gas feedstock at issue," and that "upon information and belief, BP contracted with Aux Sable" for the sale and delivery of the gas feedstock Aeropres received in 2021. According to Aeropres, it received the feedstock gas supply at issue by rail directly from Aux Sable. [Dkt. 66, ¶¶ 14–16.] On at least one occasion, Aux Sable tested one of the feedstock gases for benzene and certified that the test showed zero benzene. [Dkt. 66, ¶ 18; Dkt. 66-1 at 33–34 (Exhibit C certification).]

According to the Complaint, in July 2021, Aeropres tested the feedstock gases and confirmed "detectable levels of benzene only in the feedstock of hydrocarbon products supplied by BP and Aux Sable that were delivered to Aeropres's Morris, Illinois plant." [Dkt. 66, ¶ 23.] Aeropres alleges that BP and Aux Sable were the "sole, single source suppliers for isobutane, propane, and normal butane" at its plant when Aeropres confirmed the presence of benzene and that the tested feedstock "came in on railcars from Aux Sable that shuttled back and forth from Aux Sable to Aeropres." [*Id.*, ¶¶ 22–23.] According to Aeropres, neither BP nor Aux Sable ever notified Aeropres of the presence of benzene in the feedstock. [*Id.*, ¶ 25.]

Upon receiving the contamination results, Aeropres "disqualified BP Energy and Aux Sable as suppliers" and stopped buying feedstock from them in August 2021. [*Id.*, ¶ 26.] That month, Aeropres "issued a disclosure" regarding benzene in Propellant A-31. [*Id.*, ¶ 27.] Bayer later issued a national recall of its antifungal

sprays resulting from alleged benzene contamination caused by propellants provided by Aeropres in October 2021. [*Id.*, ¶ 28.]

Between July 2021 and December 2022, Aeropres corresponded with BP and Aux Sable about the test results, claiming that the benzene traced back to the hydrocarbons supplied by BP and Aux Sable. [*Id.*, ¶ 29.] Despite its demands for defense and indemnification, neither BP nor Aux Sable have responded. [*Id.*, ¶ 30.]

## II. Analysis[2]

### A. Breach of Contract

Illinois law articulates four elements for establishing a breach of contract claim: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Yash Venture Holdings, LLC v. Moca Fin. Inc.*, 116 F.4th 651, 657 (7th Cir. 2024) (quoting *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007)). When evaluating a breach of contract claim at the motion to dismiss stage, courts "aim to ascertain the parties' intent by first consulting the plain and ordinary meaning of the contract language." *Page v. Alliant Credit Union*, 52 F.4th 340, 346 (7th Cir. 2022*)* (cleaned up); *McWane, Inc. v. Crow Chi. Ind. Inc.*, 224 F.3d 582, 584 (7th Cir. 2000) ("If the district court determines that the contract is unambiguous, it may determine its meaning as a matter of law.").

---

[2] In its initial Motion to Dismiss, BP argued that Texas substantive law applied to the claims at issue. [Dkt. 86 at 10–12.] However, BP conceded in its reply that it does "not object to the Court applying Illinois law for the limited purpose of resolving its Motion." [Dkt. 107 at 4.] Aux Sable only relied on Illinois law in its motion to dismiss, *see* dkt. 105, so the Court applies Illinois law.

1.      **BP**

BP argues for dismissal of Count I, but the Complaint alleges facts sufficient to support each element of a breach of contract. Aeropres alleges the existence of a written contract with BP in the form of the Master Agreement; that Aeropres performed all of its obligations and conditions under that agreement; that "BP Energy and Aux Sable failed to deliver the Products in accord with the quality specifications" of the Master Agreement, specifically the delivery of non-contaminated products without detectable levels of benzene; and that as a result of the benzene-contaminated products, "BP Energy breached its contracts with Aeropres." [Dkt. 66, ¶¶ 19–20, 34–39.]

BP argues the breach of contract claim nonetheless fails because Aeropres has not alleged compliance with Section 5.3 of the Master Agreement, which BP says required Aeropres to "timely test and reject" the feedstock within five business days of delivery. [Dkt. 86 at 14–15.][3] Section 5.3 of the Master Agreement contained the following testing provision: "Buyer *may*, prior to unloading of the Product and in no case greater than five Business Days after the Product's arrival at the agreed upon destination, obtain samples of the Product from an appropriate location on the rail cars … in a manner consistent with applicable industry testing and sampling standards. [Dkt. 66-1 at 10 (emphasis added).]

Illinois courts interpret the word "may" as permissive and "shall" as mandatory in private contracts. *Martinez v. Prestige Imports, Inc.*, 2024 WL 4271018 at *5 (Ill. App. Ct. Sept. 23, 2024) (citing *Professional Executive Center v. La Salle National*

---

[3]      Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

*Bank*, 570 N.E.2d 366, 373 (1991)). Because Section 5.3 is phrased as permissive, not as mandatory, Aeropres's failure to allege compliance with Section 5.3 does not provide a basis for dismissing Count I.[4]

### 2. Aux Sable

Aux Sable also seeks dismissal of the breach of contract claim against it, Count VII, arguing that it is not a party to the Master Agreement between Aeropres and BP. [Dkt. 105 at 9–11.] Aeropres does not seriously argue that Aux Sable was a party to or otherwise bound by the terms of the Master Agreement, and the plain language of the Master Agreement does not allow for the plausible inference that Aux Sable intended to be bound by any of its terms. Indeed, the version of the Master Agreement that Aeropres attached to the Complaint lists BP Energy Company as "Party A," and contains no reference to Aux Sable. [Dkt. 66-1 at 2–21.]

Perhaps recognizing this flaw, Aeropres argues in the alternative that Aux Sable's breach arose from the contract formed between itself and Aux Sable as memorialized in certain bills of lading. [Dkt. 66, ¶¶ 17, 71; Dkt. 66-1 at 23–31.][5] Aux Sable disagrees, arguing that the bills of lading are merely shipping receipts and that even if they were a shipping contract, they do not contain any quality specifications

---

[4] BP also moves to dismiss Count II, Aeropres's contractual indemnity claim, arguing that under Sections 5.3 and 8.5(i) of the Master Agreement, Aeropres is deemed to have accepted any off-spec product under the rejection notice protocol for any product delivered before or as of July 2021. [Dkt. 86 at 17–19.] Aeropres does not engage with this argument in its response brief, so the contractual indemnity claim is dismissed. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss.")

[5] Aeropres's reliance on arguments in Aux Sable's briefs is no substitute for pleading requirements. Nor is the Court persuaded that Aeropres's "need to see the alleged written contract by and between Aux Sable and BP Energy," means that the claims should be allowed to proceed. [Dkt. 113. at 11–15.]

that could form the basis of Aeropres's breach of contract claim. [Dkt. 105 at 11–12.] The Court agrees.

For one thing, the Complaint is devoid of factual allegations supporting any inference that there was an offer and acceptance or consideration between Aeropres and Aux Sable. Aeropres cites to no language on any bill of lading that establish any terms of a contract. Nor has Aeropres alleged evidence of consideration, a crucial component of a legal agreement. And as Aux Sable points out, Aeropres's breach of contract claim is premised on an alleged failure by Aux Sable to deliver the feedstock "in accordance with the quality specifications agreed upon." [Dkt. 66, ¶ 73.] But neither the Complaint nor any bill of lading reference any such specifications. Even taking Aeropres's allegations as true, it has not alleged an enforceable contract under Illinois law. *Yash Venture Holdings*, 116 F.4th at 658 (citing *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 515 (7th Cir. 2011)) Count VII is dismissed.[6]

### B.   Warranty Claims

#### 1.   BP

Aeropres brings several warranty claims against BP. Count III alleges breach of express warranty; Count IV alleges breach of implied warranty of merchantability; and Count V alleges breach of the implied warranty of fitness for a particular purpose. BP seeks dismissal of these Counts under Section 8.4 of the Master Agreement, which provides that "unless otherwise expressly stated in the contract, neither party makes

---

[6]   Because the Court has dismissed the breach of contract claim against Aux Sable, it also dismisses Count VIII (contractual indemnity), Count IX (breach of express warranty), and Count XII (breach of implied indemnity).

7

any other warranties, express or implied, including, without limitation, any implied warranty of merchantability or fitness for any particular purpose." [Dkt. 66-1 at 13.]

In Illinois, an express warranty can be created by a "description of the goods which is made part of the basis of the bargain." 810 ILCS 5/2-313(1)(b). Stating a claim for breach of express warranty in Illinois requires a plaintiff to "allege that the seller: (1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). A claim for breach of express warranty requires the plaintiff to be in privity of contract with the defendant. *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 739 (N.D. Ill. 2015). Generally, plaintiffs "must state the terms of the warranty [alleged to be breached] or attach it to the complaint." *Gubala v. CVS Pharmacy, Inc.*, 2015 WL 3777627, at *7 (N.D. Ill. June 16, 2015).

With regard to express warranties, Aeropres argues that Section 5 of the Master Agreement *does* otherwise expressly provide for liability because that provision "specified that the quality of the BP Products was to be free from [ ] contaminants" that would make it commercially unacceptable in general industry application. [Dkt. 103 at 21–22, 24.] BP does not dispute this assertion, *see* dkt. 107 at 7 ("With respect to express warranties, even if the Court accepts Aeropres' argument, any claim for breach of express warranty is limited to those that are 'expressly stated in the contract'"), so the motion to dismiss the express warranty claim is denied.

8

BP also argues that Section 8.4 disclaimed any implied warranty of merchantability and any implied warranty for fitness for a particular purpose. [Dkt. 86 at 20–21.] Illinois law "contemplate[s] that parties to a contract may bargain away rights to an implied warranty of merchantability." *Horne v. Electric Eel Manufacturing Co., Inc.*, 987 F.3d 704, 724 (7th Cir. 2021). Under the statute, "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." 810 ILCS 5/2-316(2). Whether a disclaimer of warranties is conspicuous, and therefore effective against the plaintiff, is a question of law for the court. *F.E. Moran, Inc. v. Johnson Controls Inc.*, 697 F. Supp. 3d 786, 795 (N.D. Ill. 2023).

Here, the written disclaimer was sufficiently conspicuous, and it adequately disclaimed two implied warranties. Section 8.4 used bolded, capital typeface and nothing about its language was hidden. The disclaimer specifically provides that neither party makes any other warranties, including "any implied warranty of merchantability or fitness for any particular purpose," which is sufficient as a matter of law. Dkt. 66-1 at 13; *F.E. Moran*, 697 F. Supp. 3d at 795. Therefore, the court grants BP's motion to dismiss as to Counts IV and V.

### 2. Aux Sable

Aux Sable seeks dismissal of Count X, breach of implied warranty of merchantability and Count XI, breach of implied warranty of fitness for a particular purpose. "Implied warranty of merchantability and warranty of fitness for a particular [purpose] are two different claims, with their own elements and pleading

9

requirements." *Sneed v. Ferrero U.S.A., Inc.*, 656 F. Supp. 3d 777, 785 (N.D. Ill. 2023) (citing 810 ILCS 5/2-314 and 5/2-315).

To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege "(1) a sale of goods, (2) by a merchant of those goods, and (3) the goods were not of merchantable quality." *Brandt v. Boston Scientific Corp.*, 792 N.E.2d 296, 299 (Ill. 2003). To be merchantable, the goods must "pass without objection in the trade under the contract description" and must be "fit for the ordinary purposes for which such goods are used." 810 ILCS 5/2-314(2). A plaintiff's "allegation that the goods were not merchantable at the time of sale should be supported by an allegation of what the ordinary purpose of the good is." *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 726 (N.D. Ill. 2021) (citation omitted).

Here, Aeropres's implied merchantability claim alleges that Aux Sable "sold gas feedstock products to Aeropres that were not of merchantable quality because they were contaminated with latent defects, specifically, benzene," and that "[b]ased on the gas feedstock products being contaminated with . . . benzene, Aeropres suffered significant damage." [Dkt. 66, ¶ 93, 94.] These are "legal assertions or recital of the elements of a cause of action supported by mere conclusory statements," and thus are not entitled to the presumption of truth on a Rule 12(b)(6) motion. *Sneed*, 656 F. Supp. 3d at 786 (citing *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014)). There are no facts, for example, alleging that the feedstock supply was not merchantable *at the time of sale*, or any allegations about the ordinary purpose of the feedstock supply. As Aux Sable argues, Aeropres's Complaint "assumes" that the ordinary purpose of the supply must include Aeropres's specific use of the feedstock in a foot spray. [Dkt.

10

122 at 10–11.] The breach of implied warranty of merchantability claim in Count X is dismissed.[7]

To state a claim for breach of implied warranty of fitness for a particular purpose, plaintiffs must allege that "(1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." *Solvay USA*, 521 F. Supp. 3d at 724 (quotations omitted). Here, Aeropres alleges that "[a]t the time of contracting, BP Energy and Aux Sable had reason to know that the gas feedstock would be used by Aeropres as an ingredient in products that were intended for sale and use in humans"; that the gas feedstock "sold by BP Energy and/or Aux Sable was not fit for the purpose of being incorporated into products intended for human topical application"; and that Aeropres "relied upon BP Energy and Aux Sable for their skill and judgment to select suitable goods for the purpose of being incorporated" into topical products for humans. [Dkt. 66, ¶¶ 96–99.]

As discussed above, recital of the elements of a cause of action won't do. Aeropres does not allege that it told Aux Sable of a particular purpose for which it required the feedstock. It simply states, without factual support, that "BP Energy and Aux Sable had reason to know" of Aeropres's use. And its threadbare allegation

---

[7] Given the defects in the pleadings, the Court does not address Aux Sable's alternative arguments concerning privity. But the Court notes that in Illinois, "privity of contract is a prerequisite to recover economic damages for breach of implied warranty." *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003). For purely economic loss, the UCC-based warranty of merchantability "give[s] a buyer of goods a potential cause of action *only against his immediate seller*." *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029 (Ill. 1988) (emphasis added).

that it relied on Aux Sable's skill and judgment is likewise insufficient. At a minimum, it is missing facts that allow for the reasonable inference that Aux Sable knew of that reliance. Count XI is dismissed.

### C. Negligence

In its March 2024 Order partly granting Aeropres's motion to dismiss, *see* dkt. 45, the Court laid out the economic loss doctrine under Illinois law, which bars recovery for negligence claims based on monetary loss incurred by a plaintiff without a corresponding claim of injury to the plaintiff's person or property. *In re Chicago Flood Litig.*, 680 N.E.2d 265, 274–75 (Ill. 1997) (citing *Moorman Mfg. Co v. Nat'l Tank Co.*, 435 N.E.2d 443, 450–52 (Ill. 1982)). Both BP and Aux Sable seek dismissal of Aeropres's negligence claim under the economic loss rule and *Moorman*.

In light of Aeropres's alleged damages, the economic loss rule bars all three negligence counts for the same reasons the Court already discussed in its earlier Order. Solely economic damages cannot support a negligence claim and the damages Aeropres seeks in the negligence counts are solely economic: "[a]ll damages proximately caused by the negligence of [BP and Aux Sable], including any costs of products recalls and the defense and indemnity of any third party lawsuits filed against Plaintiff Bayer and/or Aeropres directly" as well as "Aeropres' pre-judgment and post-judgment interest, and its attorneys' fees, costs, and any and all other expenses incurred in this action." [Dkt. 66, ¶¶ 68, 111, 118.]

Just as the core of Bayer's allegation was that "Propellant A-31 is an important ingredient used to create" Bayer's sprays, *see* dkt. 45 at 24, so too with Aeropres's allegations: the gravamen is that the feedstock provided by BP and Aux Sable was an important ingredient in its propellant. [Dkt. 66, ¶¶ 14, 23.] As before, the damages

12

Aeropres seeks through its negligence claim are best classified as arising from "'disappointed expectations' of a commercial bargain and cannot be recovered in tort." *TreeHouse Foods, Inc. v. SunOpta Grains & Foods Inc.*, 2019 WL 1429337, at *9 (N.D. Ill. Mar. 29, 2019). The Court grants BP and Aux Sable's motion to dismiss as to Counts VI and XIII.

Lastly, Aux Sable seeks dismissal of Aeropres's negligent misrepresentation claim. As discussed in the Court's previous order, one exception to the economic loss doctrine arises where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant *in the business of supplying information* for the guidance of others in their business transactions. *In re Chicago Flood*, 680 N.E.2d at 272. Here, though, there is no allegation that Aux Sable is or was in the business of supplying information. [Dkt. 105 at 24–26.] Count XIV is therefore dismissed.

## IV.  Conclusion

For the reasons stated above, BP and Aux Sable's motions to dismiss [Dkt. 86, 105] are granted in part and denied in part.

Enter: 23-cv-4391  
Date: February 18, 2025

```
                                    _____
                                    Lindsay C. Jenkins
                                    United States District Judge
```